Good morning and may it please the court. I'm Karen Landau. I represent Richard Madril and I'm not used to these little socks. Those are new. I'll reserve a couple of minutes for rebuttal. All right. Track of my time. I'd like to start by addressing the courts. The court issued an order asking counsel to be prepared to address U.S. v. Roberts, which I regretfully did not cite in my briefs. So to start off, the Roberts case establishes that the government devoted most of its brief to arguing the wrong standard as I had argued in reply. Roberts establishes that an objection is enough to preserve an error of prosecutorial misconduct. One does not need to address a curative instruction and that's what happened here. So the correct standard of review is harmless error. And so if we were to treat the statements, the I submit, I submit, I submit, as vouching, why isn't the error harmless? Well, it's not harmless because this was not, first of all, Roberts also supports the conclusion that it's not harmless. The evidence was not overwhelming as to Mr. Madril. This is a case where there was substantial difference in the amount of evidence against each defendant. Mr. Madril was only charged with conspiracy. There were no substantive counts alleged against him. And the evidence against his wife was far stronger. In fact, the other point is that the most significant witness against Mr. Madril was Juan Ordonez-Leon. And Mr. Ordonez, he did not have very credible testimony. And the vouching went to his testimony because the government particularly pointed to the victim, the so-called victim witnesses. Mr. Ordonez gave testimony that was impeached by other, it was contradicted by other government witnesses. And it was, he also just, he just gave very incredible testimony. He claimed he was a victim of domestic violence. He clearly wasn't a victim of domestic violence. He, and he made clear that he would pretty much do anything to stay in the United States. He was, at the time of the trial, he was paroled in by virtue of a government's agent, which is completely proper. But he, you know, he still was hoping he was going to get to stay. And I can't blame him for that. But he, he didn't have a legal basis to be in the country, aside from the parole. And it was quite obvious he would do anything to stay. Could, could I get back to the, the I-submit language? Right. I was wondering whether there was a case using I-submit where the court said it was vouching. Because all of our cases go the other way. And the two cases you cited, Flores and Sarno, were not on point. Because in Flores, the, the government conceded the statement was vouching. And in Sarno, the prosecutor said, I suggest, and the court didn't actually hold it was vouching. It just said, didn't find any plain error. So I didn't see any case where a statement saying I-submit was held to be vouching. Is that wrong? Well, I don't see a case that uses that precise language. But I think Flores is on point. It was reviewed for plain error. But, but didn't the government concede that the statement was vouching? So, I don't see how that helps. Well. Since the government conceded that. I think the question is not the prefatory phrase. I think we have to look to what, what was the government saying. And use, I think the problem is not the use of submit. It's the use of I. It's the use of the pronoun. Because when the prosecutor uses a pronoun, it's, it's analogous to United States versus Kerr. And there, there's, there were a number of statements that the prosecutor made. He said, I think. I don't think. Those, I mean, how is I-submit different? I, I mean, especially since, you know, I mean, that's, I mean, that's basically, that is the argument I have. Because the, it, it's the pronoun that is the problem. If the, the prosecutor later went on and made a perfectly acceptable argument. And he pointed to the witness's demeanor. And he argued the facts and made inferences from the record. And that's fine. Well, don't you have to take all of that together in context? I mean, the, the prosecutor said, I submit to you that the victims in this case were extremely truthful. And their testimony was very compelling. There's an objection. The objection is sustained. Then, then the prosecutor says, let's discuss the victim's testimony. You got to, you got to see them with your own eyes, hear them with your own ears, and judge them for yourselves. And I submit to you that they were forthright. They were straightforward. Well, wasn't, isn't that statement the appropriate kind of statement to, to make with regard to their evaluation of the credibility? The latter, the latter part when the prosecutor says, you have to look at it yourself and here are the factors that you should consider. That's all correct. But when he says, but when he starts out in the beginning, and he does it twice, he says, I, I submit that they were extremely forthright. I submit they were truthful and credible. That's the problem. He started out by vouching with an I, with the I word. And that is the problem in this case. That's what makes it vouching. And because the evidence And you don't think that the, you're arguing that the rest of that statement after the objection doesn't make it harmless? No, it doesn't. It doesn't. Because the problem is, once you vouch, that's, I mean, that's, it would make more of, look, if there had been a curative instruction, if there had been other, you know, if there had been a curative instruction, the things would be different. There was no curative instruction. The, the court said, the court, what the court said was said at site, you know, at the bench. There was no instruction to the jury. But no, it doesn't. It doesn't change things. The vouching is vouching. And then I think you look to whether the error is harmless. And here it wasn't harmless because the evidence against Mr. Madril was not overwhelming. It was, and again, I concede, I have to concede it was sufficient. We would be in a different position if it wasn't sufficient. But sufficient is not the same as overwhelming. And sufficient doesn't mean the error was harmless. If there's no more questions, I'll reserve. All right, unless, okay. Sean Sullivan on behalf of the United States. May it please the court. To begin, I ask that you affirm the judgment and sentence in this case. Based on the, the questioning of opposing counsel, I'll, I'll really focus my arguments here. First of all, in terms of the standard of review, after reviewing the Roberts opinion, the United States agrees that the proper standard of review is harmless error. However, there's more to glean from the Roberts opinion in particular. What it does say is that because the defense objected and the objection was sustained and the prosecutor persisted in his argument that there should be harmful, harmless error review. But in the next sentence of the opinion, it goes on to say, it would have been helpful for defense counsel to have asked for a curative instruction, but such a request is not necessary when the error is brought to the court's attention and curative action is clearly called for. That's what makes the Roberts case different from this case. In this case, and it's the United States' position, there was no vouching at all. But even if there was, it was so mild that no further action was required. The Roberts case is so far different because what we had there was, one, there are two different ways that vouching can occur. One is the prosecutor putting the weight of the government behind the statements that he's making. The other is referring to evidence outside the record. Well, in the Roberts case, it was evidence outside the record, but there was an officer in the courtroom monitoring the witness's truthfulness. So we have a different kind of vouching altogether. Also, in Roberts... The kind of vouching we have here is exactly what prosecutors are counseled against because twice you were the trial counsel, is that right? That's right. You say, I submit to you that the victims were extremely truthful. That's the prosecutor saying, you might as well have said, I think, because it's basically the same thing. That, of course, was sustained. Then the colloquy goes on about discussing the victim's testimony and say, I submit that they were forthright, they were straightforward, objection from defense counsel and sustained, and then there is the sidebar saying, you can't do this. Under Roberts, there didn't need to be a curative statement to the jury, so we're really in the same situation as Roberts where we have two of these were sustained, and then the argument proceeds after that. So I'm having some trouble understanding your effort to somehow distance this case from Roberts in terms of the standard of review. In terms of the standard of review, I agree it's harmless error. But what Roberts also tells us is that the prosecutor's conduct in that case which was basically to say, we have this plea agreement. If our witness violates the plea agreement, he could go to the gas chamber. He mentioned the gas chamber twice. Here's a witness in the courtroom to monitor his truthfulness. You're just basically saying it was more inflammatory? Yes, and that's why they go on after they say the standard of review is harmless error to say it would have been better if the defense had asked for a standard of review. It would have been better here also, but it didn't happen. But we've said it's not required once you have the objection on the record. So where does that leave us in terms of evaluating this case? In terms of evaluating the harm or the prejudice, it gives a sharp contrast between what happened in this case and what happened in Roberts' case. That's why in Roberts' case it said that when a curative action is clearly called for, it's harmless error. But here what we have is we have the prosecutor, me, directing the jury's attention to the legal language of the witness credibility instruction that the judge gave. And then immediately, knowing that the heart of the oral argument or the summation argument is going to be comparing and contrasting the witness's testimony to determine who's telling the truth. Because there was a direct contradiction here about whether Mr. Ordonez-Leon was telling the truth, about whether he got the false document saying his case was closed, and whether he was told, or wasn't told, not to show up to court the following Monday for his hearing. With Mr. Pinon-Navarro, it was similar. Did Richard Madrill go inside the government office and come back and say, your appointment was canceled, or didn't he? Did he call him on the phone and say he was an immigration official and lie to him in that context? We had direct contradictions, and the heart of the case was which side do you believe? So there had to be a bridge in the summation between telling the jury what law to apply on judging witness credibility, and then getting into the arguments that needed to presume that the government witnesses were telling the truth. And this was a bridge or a segue between the two. Well, you don't need, I submit, to be the bridge. I mean, that's the point. It would be very easy to say, let's look at the testimony. Let's look at what she said. Let's look at whether that's the argument side of the prosecution as opposed to saying, you know, I'm giving you my word that this is credible or that there's veracity here. You're not arguing that using the phrase, I submit, gives you greater license to comment on the credibility of the witnesses. Wouldn't the more preferable comments be comments basically saying that the evidence supports certain conclusions or that the jury has a basis to find the testimony credible rather than I submit and that gives you some protection to say whatever you want to say about the witness? No, you're exactly right, Your Honor. I submit doesn't give you a protection if you say something like, I submit to you, I would not buy a used car from a defense witness, but I would from a prosecution witness, like we have, I think it's in the Flores case. It wouldn't give you protection from that. But in several contexts, including the Necromachia case and some of the others, I submit statements have been allowed to say, I submit to you, the witnesses are truthful. When you don't go outside of that and inject extra record information or your own personal opinion, the law is clear that I submit can mean jury, draw an inference from these facts or from this evidence, which is exactly what I was intending to do in this case, which is here's the law, this is how you judge the credibility of witnesses, particularly right before the second sustained objection. Listen with your own ears, look with your own eyes, and based on that, I submit to you they're truthful, they're compelling. That was the point. Well, isn't the jury supposed to understand that I submit means something different than I think? I'm not sure that they need to. I mean, they have the judge there to direct them in what they're allowed to hear and what they're not. In this case, the judge sustained the objection. Well, they have you there, too, to direct them. Yeah, I did, too, and then defense counsel, this came before their closing argument, and they had an opportunity to comment just as much as they wanted on witness credibility. I mean, I understand you're in a somewhat difficult position because you made the statements, but I thought your argument would be, let's just assume they were vouching, was there any prejudice? That's what I thought you were going to argue, but I have questions about this ethical obligation that Mr. Madrill has, and I was a little bit confused. Maybe you can unscramble this one. It seems to me that the statement that was made in closing argument, basically, if there were any documents that Mr. Odonius got, that it was Madrill's obligation, ethical obligation, as a lawyer, but I'm not sure that just because he had an ethical obligation means that that meets the elements of conspiracy of what he knew, as opposed to what his obligation was. So can you explain what you think the link is between those two? Yes. Well, in the record, what I said in summation was I mentioned the you need to apply the ethical standard as a rule of law as part of your decision making, whether to convict him or whether to find proof beyond a reasonable doubt. So what is the, I'm still, okay, that's helpful, but I'm still a little short on what it meant to say, well, his ethical obligation is evidence of the conspiracy. How does that link up? Yes. Well, first of all, at the beginning of the trial, in opening statements, the defense counsel said the lawyer did what any lawyer would do, did things that lawyers do all the time. Then when we get to the heart of the matter, which is Mr. Odonius and whether he got these false documents, you had Maribel Cantu Madril is a superior Spanish speaker who was doing some of the speaking. At some point, Richard says he walked out of the room and left Maribel there without him and then came back. The reason for those statements and why they're important is to make it clear that at that time Maribel Cantu Madril had been suspended from the practice of law. He was the only lawyer. So if he's misled about the status of his case or the likely outcome or whether he should come to court on Monday, it's his responsibility. So he wasn't like a bystander or somebody who was just there for support like some of the other office staff. He was the lawyer for Mr. Odonius Leone and he can't shift the blame at all to Maribel Cantu Madril in that context because she's already been suspended. He's the lawyer. So that was the point of that and tying that back to was he part of a conspiracy? Did he knowingly join the conspiracy? Did he intentionally commit at least one overt act in furtherance of the conspiracy to help Maribel with the conspiracy? And on those points, that's why it was relevant. That's what I was going to ask you. Are you saying that that goes to his mental state in terms of intent or knowledge or are you saying that that was more in the nature of impeachment in response to his testimony? I think it could be both, but it certainly goes to intent. It certainly goes to knowledge in the conspiracy. But also where it might go to impeachment would be with Judge Keenan, the immigration judge, who came in and said that Mr. Madril told me go forward without the client. He's not coming. Mr. Madril came and said, I didn't tell the judge that. It's important in weighing credibility in that context, and this case was all about credibility, to know he's got an obligation. He's got to tell the judge the truth. Are we reviewing this issue under Rule 403? Are we just looking at whether it was relevant and whether the prejudice outweighed its probative value or is it some other standard? I don't think we're reviewing it under 403 at all. We're reviewing whether the judge should have given a curative instruction to make it even more clear to the jury that their standard of proof was reasonable doubt and that the violation of an ethical standard in and of itself would not be proof of guilt. Was that raised by the defense or was there an issue there? I guess I didn't see what the issue was or how that came to the court. They didn't raise that at all at the district court level. They're just arguing on appeal here that the judge, sua sponte, should have intervened and given a curative instruction or some other remedial action. But their complaint is that with the jury instruction and that the jury could have been misled to believe that references to the ethical standards. I didn't know why we wouldn't just say, well, this is a plain error review. It is plain error. On this point. Yes. Okay. Thank you. Thank you. I'd like to just address the issue of the second argument, which is subject to plain error review. I think the prosecutor's argument actually makes my case. If nothing else, it goes to whether the error on the first question is harmless. Maybe I don't understand what the error is. What was the error? The error is that the prosecutor, both on cross-examination and in closing argument, the prosecutor delved into the lawyer's ethical obligations. Is that an error? It's an error in the sense that because what the prosecutor did, and I think he makes this argument here, is that he conflated the lawyer's ethical obligation to his client with criminal intent. So the instruction on criminal intent was erroneous? I guess it wasn't. I don't see where the error is. Perhaps you could clarify what language are you talking about? What I'm saying is, absolutely. If we're looking for plain error, I want to know what the error was very specifically. The error is, specifically, it is two-fold. It is a claim of plain error prosecutorial misconduct in that the prosecutor conflated, during closing argument, conflated the standard of criminal intent with the lawyer's ethical obligation to his client. Could you point me to the language? I will have to find it, but I can do it. I better be able to do it. I think you're talking about 638, where they're arguing about, Mr. Adonio said, I got that document. Is that what you're saying? I believe it's 635 to 639. Where does that conflate the burden of proof? Because I must have missed that somehow. What I argued is, I said, okay, so the argument, yes, and it reduced the burden of proof. What is it that reduces the burden of proof? I'm missing that. The prosecutor argued, and I can't pull it up right this second, but what happened was, the prosecutor argued that one of the critical issues was whether Ordonez was telling the truth or Madril was telling the truth about how Ordonez got these false documents. Ordonez said that Marvell Cantu-Madril gave them to him in Richard Madril's presence, and Richard Madril, my client, made some inculpatory statements that indicated he knew. My client said, no, I didn't see these documents until the morning of the hearing, and I called my wife and said, we're not doing this. I don't know what they're up to, but we're not doing this. So that was a critical issue. And what the government argued was that at the time when the documents would have been handed over, my client was the only lawyer in the law firm, and he was responsible. Was that incorrect? It's not technically incorrect, but the problem is that he was the only lawyer, but by doing so, and in the way that the argument came out, and I can't quote it to you in this moment without digging around, he conflated, he kept saying, the prosecutor argued, well this is a lawyer's duty, and this is a lawyer's duty, and this is a lawyer's duty, and all of these things show that he joined the conspiracy. In other words, his violation of all these duties showed that he joined the conspiracy. That reduced the burden of proof. So what do you say that the court should have done to test the evidence, or the court should have given what kind of instruction if the evidence was validly admissible? I think the court should have, at a minimum, there should have been an instruction that a lawyer's ethical duty to his clients is not the same as criminal knowledge, and that the violation of an ethical duty, much like you see in the doctor, the prescription cases, that a lawyer's professional obligation, the standard of care that a lawyer owes to his clients is not the same as criminal intent. And that we're looking at under plain error. It is under plain error. I mean, I understand, I think in a way, there's kind of this respondeat superior argument that's, I think that's what you're trying to say, is that underlies this, but to what avail when you get to plain error review? Well, that's right. And that's why I focused on the other argument. And again, I see that I'm out of time. But I do want to stress, this was not an overwhelming case. There were a lot of, the evidence against the two defendants was quite distinct. And without the vouching, the result may have been different. And for those reasons, the court should reverse. Thank you. Thank you. Thank you both for the argument this morning. United States v. Madril is submitted.
judges: McKEOWN, IKUTA, Daniels